IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

**ENTERED**
**01/22/2010**

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| SPIRIT AND TRUTH FAMILY | ) | CASE NO. 09-33890-H3-11 |
| WORSHIP CENTER, INC., | ) | |
| | ) | |
| Debtor, | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a hearing on the "Motion of
Foundation Capital Resources, Inc. for Relief from the Stay"
(Docket No. 27).  The following are the Findings of Fact and
Conclusions of Law of the court.  A separate Judgment will be
entered granting the motion.  To the extent any of the Findings
of Fact are considered Conclusions of Law, they are adopted as
such.  To the extent any of the Conclusions of Law are considered
Findings of Fact, they are adopted as such.

<u>Findings of Fact</u>

Spirit and Truth Family Worship Center, Inc. ("Debtor")
filed a voluntary petition under Chapter 11 of the Bankruptcy
Code on June 1, 2009.  Debtor has remained as a Chapter 11 debtor
in possession.

Debtor, which operates a church and associated mission
programs, was incorporated in 1999.  Debtor presently operates in
a rented space of approximately 5,000 square feet in League City,
Texas.  Edwin Bamberg and Alma Bamberg are the co-pastors of

Debtor's church.  Edwin Bamberg testified that he is the
president of the Debtor.  Alma Bamberg testified that she is
responsible for the Debtor's finances.

Prior to 2006, Debtor acquired approximately six acres
of real property located at the intersection of Interstate
Highway 45 and Farm to Market Road 518 in League City, Texas.
Edwin Bamberg testified that the real property is located less
than a mile from the location where Debtor currently conducts its
operations.

On February 13, 2006, Debtor borrowed $2,150,000 from
Foundation Capital Resources, Inc. ("Foundation"), for
construction of a church building.  The terms of the construction
note required that Debtors pay monthly payments of interest only
(calculated at 8.25% per annum) for one year.  The note provided
that it became fully due and payable on February 13, 2007.  The
note provided that if no event of default had occurred, the loan
would convert to permanent financing based on a 25 year
amortization of the balance.  If the loan had been converted to
permanent financing, the initial monthly payments would have been
$16,951.68.  The note provided that the interest rate would
change on February 13, 2010, and every 36 months thereafter, to
the prime rate on that date plus three percent.  (Foundation
Exhibit 1).  Debtor executed a deed of trust covering the six
acres of real property, buildings on that property, and other

2

collateral.   (Foundation Exhibit 2).

Debtor and Foundation executed three agreements modifying the note.  The last of these agreements, executed on May 8, 2008, required that Debtor make interest only payments through July, 2008.  The agreement provided that the full balance was due on August 13, 2008, and that the monthly payments if the note was converted to permanent financing would be $17,284.81, based on a loan amortization of 282 months.[1]  (Foundation Exhibit 3).

Debtor made payments through July, 2008.  After July, 2008, Debtor made no regular payments to Foundation.  Edwin Bamberg testified that, during October, 2008, he met with Gene Johnson, a representative of Foundation, in an effort to avoid foreclosure.[2]  Edwin Bamberg testified that Debtor paid $30,000 during April, 2009 and $20,000 during May, 2009, in an effort to forestall foreclosure while Debtor attempted to negotiate with Foundation.  Edwin Bamberg testified that no further agreement was reached with Foundation.

---

[1]The court notes that the maturity date was extended by 18 months through these agreements, and that the amortization schedule was reduced by 18 months.

[2]The court takes judicial notice that Hurricane Ike made landfall on the Texas Gulf Coast area on September 13, 2008, causing major damage to many locations in southeast Texas.  Edwin Bamberg testified that some of the problems Debtor encountered in completing the church resulted from the impact of Hurricane Ike.

Tammy Parnell, Foundation's loan servicing supervisor, testified that interest was accruing at approximately $14,400 per month during April and May, 2009. She testified that Debtor was approximately $129,000 in arrears during May, 2009.

Johnny Baker, Foundation's vice president of construction services, testified that he inspected the building during May, 2009. He testified that the building's metal frame had been erected, with a metal skin and metal roof. However, exterior doors and windows were not installed, and the environment inside was not controlled. He testified that there had been some work done on the interior, but that it had been damaged by mold and mildew. He testified that he believes it would cost in excess of $2 million to complete the building.

In the instant motion, Foundation seeks relief from the automatic stay for cause, including the lack of adequate protection, and also for the reason that Debtor has no equity in the property and the property is not necessary to an effective reorganization, because Debtor has not proposed, and cannot propose, a confirmable plan.

Debtor's offer of adequate protection, contained in its response to the instant motion, is that Debtor will execute a new note, in the amount Movant has asserted is presently due, at 7 percent interest. Debtor will make 60 monthly payments of $8,648, based on a 30 year amortization schedule, with a balloon

payment (in an unspecified amount) due at the end of the 60 year term.  Debtor will pay all tax and insurance obligations.

Edwin Bamberg testified that the amount of the monthly payment was selected in order to give Debtor sufficient funds to complete the church building, and to pay Debtor's expenses, while "providing an income stream" to Foundation.  He testified that 31 members of the congregation have committed to pay the $8,648 monthly payment.  He testified that Debtor has no funds to complete construction of the church building, but that he intends to hold rallies and fund-raisers to obtain such funds.

Debtor's monthly operating reports show that Debtor earned positive income in just one month since the inception of the instant case:  July, 2009.  (See Docket Nos. 13, 14, 29, 23, 32, 38).[3]  Edwin Bamberg testified that net earnings of Debtor (which total a loss of $35,264.45) do not include expenses for payments to Foundation, insurance, or completing construction of the church building.

Edwin Bamberg testified that he believes the value of the property is $3 million.  He testified that his opinion of value is based on a pre-2008 appraisal (not in evidence) he obtained, covering the real property with a completed church

---

[3]The court notes that, according to Debtor's disclosure statement, these amounts include annual salaries of $43,550 for Edwin Bamberg and $29,250 for Alma Bamberg, plus annual housing allowances of $55,535.48 for Edwin Bamberg and $41,235.48 for Alma Bamberg, for annual total compensation for the Bambergs of $169,570.96.  (Docket No. 30).

building.  He testified that he has no expertise in valuing real property.  He testified that he has installed three doors and some windows, but that the other window and door openings remain covered with particle board.  He testified that he is hoping to obtain a certificate of occupancy with respect to a portion of the building, and to move the church to that portion.

<u>Conclusions of Law</u>

Section 362(d) of the Bankruptcy Code provides in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
>> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>>
>> (2) with respect to a stay of an act against property under subsection (a) of this section, if
>>
>>> (A) the debtor does not have an equity in such property; and
>>>
>>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1).

The party requesting relief has the burden of proof on the issue of the debtor's equity in the property.  The party opposing relief has the burden of proof on all other issues. 11 U.S.C. § 362(g).

With respect to debtor's equity in the property, Foundation has not presented sufficient evidence of the property's value to carry its burden of proof.  The only evidence as to value of the property is Bamberg's belief that the value would be $3 million if the building were completed.

What constitutes "cause" for the lifting of the stay pursuant to Section 362(d)(1) is not defined in the Bankruptcy Code.  Whether cause exists must be determined on a case by case basis based on an examination of the totality of circumstances. In re Trident Assoc. L.P., 52 F.3d 127 (6th Cir. 1995); Claughton v. Mixson, 33 F.3d 4 (4th Cir. 1994); In re Tucson Estates, Inc., 912 F.2d 1162 (9th Cir. 1990).

In the instant case, Debtor's plan provides for further negative amortization of Foundation's note, by making payments that are less than the interest accruing under the note.  Even if Debtor's congregation is willing to provide funding to make the $8,648 per month in payments to Foundation called for under the plan, Debtor has presented very weak evidence of its ability to make not only those payments, but also to pay for insurance, completion of the building, and the balloon payment contemplated under the plan.  Moreover, although Edwin Bamberg's testimony indicates that he is hoping to move the congregation to the building, Debtor has presented insufficient evidence that the Debtor will be able to obtain permission to occupy the building.

7

The court concludes, based on the totality of circumstances, that Debtor failed to carry its burden of proof; cause exists for lifting of the stay with respect to Foundation.

Based on the foregoing, a separate Judgment will be entered granting the "Motion of Foundation Capital Resources, Inc. for Relief from the Stay" (Docket No. 27).

Signed at Houston, Texas on January 22, 2010.

LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

8